ELECTRONICALLY FILED
Jefferson County Circuit Court
Flora Cook-Bishop, Circuit Clerk
2026-Sep-18 15:24:16
35CV-26-1484
C11WD02 : 50 Pages

**IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS**
**CIVIL DIVISION**

**LARRY G. RUSHING** **PLAINTIFF**

**v.** **Case No. 35CV-26-_________**

**CITY OF WHITE HALL, ARKANSAS;**
**DAVID PARKER, Individually and in his Official Capacity as Chief of Police of the City of White Hall; and**
**NOEL FOSTER, individually and in his Official Capacity as Mayor of the City of White Hall** **DEFENDANTS**

---

# COMPLAINT

Comes now the Plaintiff, Larry G. Rushing, by and through his attorney, Christopher P. Corbitt of the Corbitt Law Firm, PLLC, and for his Complaint against the Defendants City of White Hall, Arkansas; David Parker, individually and in his official capacity as Chief of Police of the City of White Hall; and Noel Foster, individually and in his official capacity as Mayor of the City of White Hall, states and alleges as follows:

## I. INTRODUCTION

1. The General Assembly of the State of Arkansas has declared it vital in a democratic society that public business be performed in an open and public manner so that the electors shall be advised of the performance of public officials and of the decisions that are reached in public activity and in making public policy. Ark. Code Ann. § 25-19-102. That declaration is not aspirational. It is the law of this State, and it binds the City of White Hall exactly as it binds every other public body in Arkansas.



EXHIBIT
A

2. On June 22, 2026, Larry Rushing, a seventy-eight-year-old retired resident of White Hall, walked into his own City Hall and asked his own government a simple question: what do the City's street cameras cost the taxpayers? He asked what each unit cost, what it cost to install them, and what the City pays every month to keep them running. He asked out loud, in person, at the counter, during business hours — exactly as the Arkansas Freedom of Information Act ("FOIA") permits any citizen of this State to do.

3. The City's answer was not a public record. The City's answer was a set of handcuffs and a ride to jail.

4. Rather than produce the contracts and invoices — quintessential public records that no exemption shields from disclosure — the Mayor of White Hall told Mr. Rushing that his request did not count unless he put it in writing and submitted it the way the City preferred. When Mr. Rushing did what citizens are entitled to do, and stood on the statute, the Mayor summoned the police. The Chief of Police, David Parker, arrived, took hold of the seventy-eight-year-old man's arm as he sat quietly in a chair in the City Hall lobby, pulled him up out of that chair, and announced that he was under arrest. Officers handcuffed Mr. Rushing behind his back and drove him out of Jefferson County altogether, to a detention facility in Grant County, where he was booked, photographed, and jailed until his wife could arrive with cash to buy his freedom.

5. The charge was criminal trespass. The premises Mr. Rushing was accused of trespassing upon were the public offices of the municipal government that his taxes pay for, during the hours those offices were open to the public, while he was there to transact the precise public business the Arkansas Freedom of Information Act guarantees him the right to transact.

6. The arresting officer's own report records why Mr. Rushing believed he had been arrested. In the officer's words, Mr. Rushing said on the ride to jail that he had been arrested because he tried to make a verbal FOIA request at City Hall White Hall. After the arrest, he asked the officers transporting him whether they were loyal to the Mayor or to the Constitution of the United States. He asked, repeatedly, how officers could do their jobs if they did not know that a citizen may make a FOIA request verbally, without completing the City's preferred paperwork. Those questions are in the police report because Mr. Rushing kept asking them. They remain unanswered.

7. Hours after his release, Mr. Rushing and his wife went to the White Hall Police Department to ask the Chief what, exactly, he was supposed to have done wrong. The Chief asked him what he had needed from City Hall in the first place. Mr. Rushing explained again: the cost of the cameras, the cost of installation, the monthly cost to the City. He explained again that the Freedom of Information Act does not require him to reduce his request to paper. According to the Chief's own written narrative, the Chief stopped him and told him they were not going to go over what the Mayor had told him. When Mr. Rushing asked whether the Chief followed the United States Constitution or simply did what the Mayor told him to do, the Chief told him he was done talking and ordered him out of the police station as well.

8. That exchange states this case better than any pleading could. A citizen asked a police chief whether he answered to the Constitution or to the Mayor. The Chief's answer was to show him the door — the second door he had been shown that day for asking the same question.

9. This lawsuit asks a jury and this Court to supply the answer the Chief would not. It seeks damages under 42 U.S.C. § 1983 and the Arkansas Civil Rights Act for the retaliatory arrest and seizure of a citizen because of his protected speech and his protected petition; it seeks damages under the Fourth and Fourteenth Amendments for the force used against him and for the unwritten ban the City claims to have imposed on him; it seeks damages under the common law of Arkansas and Ark. Code Ann. § 16-118-107 for assault, battery, false arrest, false imprisonment, abuse of process, and outrage; it seeks relief under the Arkansas Freedom of Information Act for the denial of a lawful request for public records; and it seeks a declaration under the Uniform Declaratory Judgments Act that the Arkansas Freedom of Information Act means what it says — that a citizen of this State may ask for public records out loud, in person, at the counter, without being led out of City Hall in handcuffs for doing so.

## II. PARTIES

10. Plaintiff Larry G. Rushing is an adult citizen and resident of the City of White Hall, Jefferson County, Arkansas, residing at 702 East Street, White Hall, Arkansas 71602. Mr. Rushing was born September 26, 1947, and was seventy-eight (78) years of age on the date of the events described in this Complaint. He is retired. He is a citizen of the State of Arkansas within the meaning of Ark. Code Ann. § 25-19-105(a) and a taxpayer of the City of White Hall.

11. Defendant City of White Hall, Arkansas, is a municipal corporation and a city of the first class organized and existing under the laws of the State of Arkansas, situated in Jefferson County, Arkansas. The City is a "public body" and its officers are "custodians" of public records within the meaning of the Arkansas Freedom of Information Act, Ark. Code Ann.

§ 25-19-101 et seq. The City is a "person" subject to suit under 42 U.S.C. § 1983 and under Ark. Code Ann. § 16-123-105. The City may be served through its Mayor at White Hall City Hall, 101 Parkway Drive, White Hall, Arkansas 71602.

12. Defendant Noel Foster is, and at all times relevant to this Complaint was, the duly elected Mayor of the City of White Hall, Arkansas. He is sued in his individual and official capacity. As Mayor, Defendant Foster is the chief executive officer of the City and exercises general superintending control over the officers and affairs of the City. He is a custodian of the City's public records. At all relevant times Defendant Foster acted under color of state law and pursuant to the authority vested in him by the City. He may be served at White Hall City Hall, 101 Parkway Drive, White Hall, Arkansas 71602.

13. Defendant David Parker is, and at all times relevant to this Complaint was, the Chief of Police of the City of White Hall, Arkansas. He is sued both in his individual capacity and in his official capacity. As Chief of Police, Defendant Parker is the final policymaking official of the City with respect to the law enforcement practices, arrest decisions, training, and supervision of the White Hall Police Department. At all relevant times Defendant Parker acted under color of state law and pursuant to the authority vested in him by the City. He may be served at the White Hall Police Department, White Hall, Arkansas.

14. In laying hands upon the person of Mr. Rushing, Defendant Parker acted intentionally and not negligently. To the extent Defendant Parker contends that his conduct fell within the scope of his employment, Plaintiff pleads in the alternative that the conduct was intentional, willful, malicious, and undertaken in bad faith, and that Defendant Parker is therefore not entitled to the statutory immunity conferred by Ark. Code Ann. § 21-9-301,

which by its terms reaches only claims arising from negligent acts and does not immunize intentional torts.

15. Defendants Foster and Parker are each a "person" acting under color of state law within the meaning of 42 U.S.C. § 1983 and under color of a statute, ordinance, regulation, custom, or usage of this State and of one of its political subdivisions within the meaning of Ark. Code Ann. § 16-123-105(a).

## III. JURISDICTION AND VENUE

16. This Court is a court of general jurisdiction under Article 7, § 11 of the Arkansas Constitution and Amendment 80 thereto, and has subject matter jurisdiction over each claim pleaded in this Complaint.

17. State courts of general jurisdiction possess concurrent jurisdiction over claims arising under 42 U.S.C. § 1983, and a state court may not decline to hear such a claim on the basis of its federal character. Plaintiff affirmatively elects this forum for all of his claims.

18. This Court has jurisdiction over Plaintiff's Arkansas Freedom of Information Act claim under Ark. Code Ann. § 25-19-107(a), which vests jurisdiction in the circuit court of the county in which the party denied the rights resides and in which the public records sought are located. Mr. Rushing resides in Jefferson County, the City of White Hall is located in Jefferson County, and the records he requested are maintained in Jefferson County.

19. This Court has jurisdiction over Plaintiff's request for declaratory relief under the Uniform Declaratory Judgments Act, Ark. Code Ann. § 16-111-101 et seq., and specifically under Ark. Code Ann. §§ 16-111-102, 16-111-104, and 16-111-110.

20. Venue is proper in Jefferson County, Arkansas, under Ark. Code Ann. § 16-60-101 et seq. and Ark. Code Ann. § 16-60-103, because all Defendants reside and are situated in

Jefferson County, the acts and omissions complained of occurred in Jefferson County, and Plaintiff resides in Jefferson County.

21. The amount in controversy exceeds the amount required for federal court jurisdiction in diversity of citizenship cases, exclusive of interest and costs. Plaintiff pleads this figure solely for jurisdictional purposes as permitted by Ark. R. Civ. P. 8(a)(2) and states no specific sum of damages.

22. Upon information and belief, the City of White Hall maintains liability insurance coverage, participates in a self-insured municipal risk pool, or participates in a municipal legal defense or property-and-casualty program that affords coverage for one or more of the claims asserted in this Complaint. To the extent Ark. Code Ann. § 21-9-301 would otherwise apply to any claim, immunity is waived to the extent of that coverage. Plaintiff further pleads, in the alternative, that § 21-9-301 has no application to the claims asserted in this Complaint because those claims arise from intentional conduct and because § 21-9-301 does not bar claims for declaratory or injunctive relief.

23. No statute or ordinance requires Plaintiff to present a notice of claim to the City of White Hall as a condition precedent to this suit. No administrative remedy must be exhausted before bringing an action under 42 U.S.C. § 1983, the Arkansas Civil Rights Act, or the Arkansas Freedom of Information Act. Each claim pleaded herein is timely under the applicable statute of limitations.

## IV. FACTUAL ALLEGATIONS

### *A. The Arkansas Freedom of Information Act Does Not Require Anything in Writing.*

24. The Arkansas Freedom of Information Act, Ark. Code Ann. § 25-19-101 et seq., provides that all public records shall be open to inspection and copying by any citizen of the State

of Arkansas during the regular business hours of the custodian of the records. Ark. Code Ann. § 25-19-105(a)(1)(A).

25. The Act expressly provides that a citizen may make a request to the custodian to inspect, copy, or receive copies of public records, and that the request may be made in person, by telephone, by mail, by facsimile transmission, by electronic mail, or by other electronic means provided by the custodian. Ark. Code Ann. § 25-19-105(a)(2)(A)–(B).

26. The Act imposes exactly two substantive conditions on a request: the requester must be a citizen of the State of Arkansas, and the request must be sufficiently specific to enable the custodian to locate the records with reasonable effort. Ark. Code Ann. § 25-19-105(a)(2)(C).

27. Nowhere does the Arkansas Freedom of Information Act require that a request be reduced to writing. Nowhere does it require that a request be submitted on a form. Nowhere does it require that a request be submitted through a website, a portal, or any other channel of the custodian's choosing. Nowhere does it permit a custodian to condition a citizen's statutory right of access on the citizen's willingness to fill out the custodian's paperwork.

28. The Act is to be liberally construed in favor of disclosure and its exceptions narrowly construed. A public body has no authority to add, by policy or by practice, a procedural prerequisite that the General Assembly declined to impose.

29. A request made in person and out loud is therefore a valid request under the Arkansas Freedom of Information Act, and the custodian's obligation to respond attaches the moment such a request is made.

***B. The City of White Hall's Written-Request Policy.***

30. The City of White Hall maintains and enforces a policy, practice, or custom — whether written, unwritten, or both — under which the City refuses to treat an oral, in-person request for public records as a valid request under the Arkansas Freedom of Information Act, and instead requires that requests be reduced to writing and submitted online or on a City-prescribed form before the City will act on them.

31. That policy, practice, or custom is contrary to Ark. Code Ann. § 25-19-105(a)(2)(B) and is unlawful on its face and as applied.

32. The policy, practice, or custom was adopted, ratified, applied, and enforced by Defendant Foster in his capacity as Mayor and custodian of the City's records, and was enforced by Defendant Parker in his capacity as Chief of Police through the arrest of Mr. Rushing, at the behest of Mayor Foster, and through the Chief's express refusal, later the same day, to revisit "what the mayor had told him."

33. Upon information and belief, the City of White Hall has applied this policy, practice, or custom to other citizens, and the arrest of Mr. Rushing was the culmination of a pattern of resistance by the City to lawful requests for public records.

34. Upon information and belief, the City of White Hall publishes on its official website, and directs citizens at City Hall to use, a form or online portal through which the City requires that Freedom of Information Act requests be submitted, and City officers and employees have been instructed that requests not submitted through that channel need not be honored. That directive is the official policy of the City of White Hall.

35. Defendant Foster is the municipal official vested with final, unreviewable authority over the City's response to requests for public records. His determination on June 22, 2026, that Mr. Rushing's oral request would not be honored was final within the City and was

subject to no further review by any City officer, board, or council. His decision was therefore the act of the City itself.

36. Defendant Parker is the municipal official vested with final, unreviewable authority over arrest decisions and law enforcement practices within the City of White Hall. His decision to arrest Mr. Rushing was final within the City and was subject to no further review. His decision was therefore the act of the City itself.

37. Upon information and belief, the City of White Hall has never trained its elected officials, its employees, or its police officers that the Arkansas Freedom of Information Act permits a citizen to make an oral, in-person request for public records; that a citizen present at City Hall for that purpose is authorized by law to be upon the premises; or that arresting such a citizen violates the First Amendment. The need for that training is obvious, and the City's failure to provide it made the violation of Mr. Rushing's rights a highly predictable consequence of the City's deliberate indifference.

***C. June 22, 2026: The Request.***

38. On June 22, 2026, during regular business hours, Mr. Rushing went to White Hall City Hall, located at 101 Parkway Drive, White Hall, Arkansas 71602. City Hall is a public building owned and operated by the City of White Hall, open to the public during business hours, and is the office of the custodian of the City's public records.

39. Mr. Rushing went to City Hall for a single purpose: to make a request under the Arkansas Freedom of Information Act for records concerning the City's street cameras. Specifically, he sought records reflecting (a) the cost of each camera unit; (b) the cost to install the units; and (c) the amount the City pays per month for the cameras. Those

figures are recorded in contracts, purchase orders, invoices, warrants, and monthly disbursement records maintained by the City.

40. The records Mr. Rushing requested are "public records" within the meaning of Ark. Code Ann. § 25-19-103. They constitute records of the receipt and expenditure of public funds by a municipal government. No exemption in the Arkansas Freedom of Information Act, and no other statute, shields the price the City pays for surveillance equipment from public inspection.

41. Mr. Rushing's request was sufficiently specific to enable the custodian to locate the responsive records with reasonable effort. He identified the subject matter (the City's street cameras) and the three categories of cost figures he sought.

42. Mr. Rushing is a citizen of the State of Arkansas and was known to the City's officials to be a resident of White Hall.

43. City Clerk Ellen Welch was assisting Mr. Rushing with his request when Defendant Foster intervened, took the request, and informed Mr. Rushing that the request had to be submitted in writing and online before the City would act upon it.

44. Mr. Rushing, correctly, told the Mayor that the Arkansas Freedom of Information Act does not require a written request and that he was entitled to make his request in person.

45. The City did not produce the requested records on June 22, 2026.

46. The City did not deny the request in writing.

47. The City did not cite any exemption.

48. The City did not state a compliance date.

49. The City simply refused to treat the request as a request.

50. At no time on June 22, 2026, did Mr. Rushing threaten anyone, touch anyone, damage any property, obstruct any passageway, raise his hands to anyone, or commit any act of violence. He sat down in a chair in the City Hall lobby.

51. Mr. Rushing was not told to leave City Hall, and he did not refuse to leave City Hall. He was, at all relevant times, a member of the public lawfully present in a public building during business hours, exercising a statutory right.

52. Mr. Rushing first contact with a public official after sitting down was Chief Parker yelling at him so loud that the volume of his voice made temporarily disabled Mr. Rushing's hearing aids rendering him unable to hear Chief Parker.

***D. The Arrest.***

53. Rather than comply with the Arkansas Freedom of Information Act, based on information and belief, Defendant Foster ordered Chief Parker for someone from City Hall to arrest Mr. Rushing and/or call the White Hall Police Department.

54. Defendant Parker, the Chief of Police, came to City Hall. By the Chiefs own written account, he entered through the rear of City Hall looking for the Mayor, was told by a City Hall employee that the Mayor was in the front office talking with Mr. Rushing, and was advised that he "might need to go up front" because Mr. Rushing was "causing a disturbance."

55. Also by the Chiefs own written account, the "disturbance" consisted of Mr. Rushing sitting in a chair in the City Hall lobby.

56. Defendant Foster approached the city clerk, Ellen Welch, and Plaintiff Rushing asked "who are you?", and Defendant Foster said "I'm the Mayor". Rushing responded "That is who I thought you were.", then Defendant Foster took the piece of paper away from

city clerk Ellen Welch. Then, Defendant Foster said "FOIA requests have to be made online". He then closed glass partition between, and said "call the police!".

57. Mr. Rushing then sat down in the chair outside the window.

58. Defendant Parker then had a discussion in the office behind the window.

59. Then Defendant Parker came into the foyer where Mr. Rushing was seated. Defendant Parker then approached Mr. Rushing screaming and yanked Mr. Rushing out of his chair.

60. Mr. Rushing stated "please take it down and made the statement, I am here for simple FOIA request" meaning the volume of Chief Parker's voice.

61. Where upon Defendant Parker snatched Mr. Rushing up by the arm, violently standing up Mr. Rushing and stated "you are under arrest".

62. Defendant Parker then passed Mr. Rushing to a White Hall police officer, who handcuffed him with his hands behind his back and walked him out of City Hall and onto the street, in public view, in the middle of the afternoon.

63. Mr. Rushing was seventy-eight years old. He is five feet ten inches tall and weighs approximately two hundred pounds. He was seated. He had committed no crime. He had made no threat. His offense was that he had asked his government what its cameras cost and had declined to accept the answer that his question did not count.

64. Defendant Parker personally directed that Mr. Rushing be transported not to any facility in Jefferson County, but to the Sheridan Detention Center in Grant County, Arkansas — a jail in a different county, approximately forty miles from White Hall City Hall.

65. During the transport, Mr. Rushing repeatedly stated that he had been arrested because he tried to make a Freedom of Information Act request. He asked the transporting officer whether the officers were loyal to the Mayor or to the Constitution of the United States.

He asked how officers could do their jobs if they did not know that a citizen may make a FOIA request verbally without completing the City's paperwork. Each of these statements is recorded in the arresting officer's own narrative.

66. During the transport, the handcuffs cut into Mr. Rushing's wrists and caused him pain. He complained. The transporting officer eventually pulled to the side of the road and moved the handcuffs from behind his back to the front. Body-worn camera video captured the removal and repositioning of the handcuffs.

67. Mr. Rushing was booked into the Sheridan Detention Facility, 304 Gatzke Drive, Sheridan, Arkansas, at approximately 3:11 p.m. on June 22, 2026. He was photographed, processed as an inmate, and held until his wife arrived at the White Hall Police Department and posted a full cash bond for his release. He was released at approximately 3:40 p.m.

68. Mr. Rushing was charged by citation, with misdemeanor criminal trespass under Ark. Code Ann. § 5-39-203, and was given a court date of August 5, 2026, at 11:45 a.m. in the White Hall Department of the Jefferson County District Court.

69. The criminal charge against Mr. Rushing arising out of these events remains pending as of the filing of this Complaint. Plaintiff does not by this Complaint seek any relief that would require this Court to determine the validity of any conviction, and no conviction exists.

70. No court has adjudicated the criminal charge arising from these events, and no conviction exists that success on any claim pleaded in this Complaint would call into question. Should this Court conclude that any claim pleaded herein must abide the outcome of the

criminal proceeding, Plaintiff respectfully requests that the claim be stayed rather than dismissed, so that no limitations period expires while the criminal matter is pending.

***E. The Evening at the Police Department.***

71. At approximately 5:30 p.m. on June 22, 2026 — the same day — Mr. Rushing and his wife went to the White Hall Police Department and met with Defendant Parker in his office.

72. Defendant Parker informed Mr. Rushing that because his wife had posted a full cash bond, he did not have to appear in court at all. Mr. Rushing declined the offer. He told the Chief that he wanted to appear in court and plead not guilty.

73. Defendant Parker then asked Mr. Rushing what he had needed from City Hall in the first place.

74. Mr. Rushing explained, again, that he wanted to file a Freedom of Information Act request to find out about the street cameras: how much each unit cost, how much it cost to install the units, and how much the City pays per month for the cameras. He explained, again, that he had the right to ask for that information under the Freedom of Information Act without putting his request on paper.

75. By his own written account, Defendant Parker stopped Mr. Rushing and told him they were not going to go over what the Mayor had told him.

76. Mr. Rushing then asked Defendant Parker whether he followed the United States Constitution or whether he simply did whatever the Mayor told him to do.

77. By his own written account, Defendant Parker told Mr. Rushing that he was done talking to him and that Mr. Rushing could leave his office, too.

78. On his way out, Mr. Rushing stated that he wished to file a complaint against the officer who had handcuffed him because it had hurt his wrist.

*F. The Absence of Probable Cause.*

79. A person commits criminal trespass under Arkansas law only if he purposely enters or remains unlawfully in or upon the premises of another. Ark. Code Ann. § 5-39-203(a).

80. Arkansas law provides that a person who enters or remains in or upon premises that are at the time open to the public does so with license and privilege, regardless of his purpose, unless he defies a lawful order not to enter or remain. Ark. Code Ann. § 5-39-101.

81. White Hall City Hall was open to the public at the time Mr. Rushing was there. Mr. Rushing therefore entered with license and privilege as a matter of law.

82. No lawful order to leave was ever communicated to Mr. Rushing. To the extent any Defendant contends that an order was given, that order was not lawful, because its object was to prevent a citizen from exercising a right conferred upon him by the General Assembly of the State of Arkansas. A municipal official cannot manufacture the elements of criminal trespass by ordering a citizen out of a public building for the offense of invoking a public-records statute.

83. It is a defense to prosecution for criminal trespass that the person was a guest or invitee; that the person was required to enter upon the premises of the other person for a business reason; or that the person was authorized by law to enter upon the premises. Ark. Code Ann. § 5-39-203(c)(1)–(3). Each of those defenses was plainly applicable to Mr. Rushing, and each was known or obvious to Defendants at the time of the arrest.

84. Mr. Rushing was authorized by law to be at White Hall City Hall on June 22, 2026, because Ark. Code Ann. § 25-19-105(a) grants every citizen of Arkansas the right to

inspect public records during the regular business hours of the custodian, and because Ark. Code Ann. § 25-19-105(a)(2)(B) grants him the right to make his request in person.

85. There was accordingly no probable cause to arrest Mr. Rushing for criminal trespass or for any other offense.

86. Defendants have never contended that Mr. Rushing committed any offense other than being present at City Hall. He was charged with no offense involving violence, no offense involving disorderly conduct, no offense involving obstruction, and no offense involving resisting arrest.

87. Upon information and belief, other citizens who have been present in the lobby of White Hall City Hall during business hours, including citizens who have declined to leave promptly when asked and citizens who have raised their voices, have not been arrested for criminal trespass. The distinguishing feature of Mr. Rushing's case is the content of his speech: a demand for public records and a challenge to the City's unlawful policy.

88. Upon information and belief, objective evidence in the possession of Defendants — including body-worn camera recordings, City Hall security and surveillance recordings, dispatch records, incident reports, and arrest records — will establish that otherwise similarly situated individuals who did not engage in the same protected speech were not arrested.

89. By way of example and upon information and belief, White Hall police officers have been called to White Hall City Hall on other occasions to address members of the public who lingered after being asked to leave, who raised their voices to City employees, or who declined to follow instructions given by City officials, and in none of those instances

was the citizen seized, handcuffed, transported to another county, jailed, and charged with criminal trespass.

90. Upon information and belief, the City of White Hall issued no citation for criminal trespass occurring at White Hall City Hall to any person other than Mr. Rushing during the five (5) years preceding June 22, 2026.

91. The dispatch logs, calls for service, incident reports, arrest records, citation records, City Hall surveillance recordings, and body-worn camera recordings required to identify every comparator are within the exclusive possession, custody, and control of Defendants, and Plaintiff pleads the foregoing upon information and belief pending discovery of those materials.

***G. The Record Defendants Created.***

92. The written reports generated by the White Hall Police Department in connection with this arrest are themselves evidence of retaliatory purpose.

93. The incident report identifies Officer Cody William Jackson as the reporting officer and captions the initial narrative under his name, yet the text of that narrative is written in the first person by a different officer, who identifies himself in the body of the narrative as Officer Johnny Brixey. The report reflects that it was entered by "jbrixey."

94. The reports record no method of entry, no weapon, no injury to any person other than Mr. Rushing, and no property damage. The "victim" of the offense is listed as the State of Arkansas.

95. Defendant Parker's narrative asserts that he had been "informed in the past" that Mr. Rushing had been told he could not return to White Hall City Hall because of incidents he had caused. That assertion is hearsay upon hearsay in the Chief's own report. Upon

information and belief, no written notice barring Mr. Rushing from City Hall was ever issued to him, no hearing of any kind preceded any such purported ban, no duration was specified, and no process for challenging it was ever provided.

96. Any policy, practice, or custom of the City of White Hall under which a citizen may be permanently barred from the seat of his own municipal government, without written notice, without a hearing, and without any avenue of review, is independently unconstitutional and independently unlawful.

97. Defendant Parker's narrative further asserts that White Hall City Hall "is the hub for all City business, which would make it a critical infrastructure." Under Ark. Code Ann. § 5-39-203(b)(1)(B), criminal trespass upon "critical infrastructure" could be a Class D felony.

98. Based on information and belief, the Chief of Police of White Hall thus took the trouble, in a report about a seventy-eight-year-old man asking about camera invoices, to lay the predicate for a felony. That is not the work product of an officer resolving a disturbance. That is the work product of an official building a case against a critic.

99. Upon information and belief, White Hall City Hall is not "critical infrastructure" within the meaning of Arkansas law, and Defendant Parker knew or should have known that it is not.

***H. Protected Activity, Causation, and Injury.***

100. Mr. Rushing's request for public records was activity protected by the First Amendment to the United States Constitution, including the rights to freedom of speech, to petition the government for redress of grievances, and to receive information about the operations of government.

101. Mr. Rushing's request for public records was likewise activity protected by Article 2, §§ 4 and 6 of the Arkansas Constitution, and by Ark. Code Ann. § 25-19-101 et seq.

102. Mr. Rushing's statements to Defendant Foster, to Defendant Parker, and to the transporting officers — including his statement that the Freedom of Information Act does not require a written request, his statement that he had a right to be present, and his question whether the officers were loyal to the Mayor or to the Constitution — were protected speech. Criticism of government officials, including police officials, lies at the very core of the First Amendment. The freedom of a citizen to verbally oppose or challenge official action without thereby risking arrest is one of the principal characteristics distinguishing a free society from a police state.

103. Defendants' conduct — seizing Mr. Rushing, arresting him, handcuffing him, transporting him out of the county, jailing him, and causing a criminal charge to be lodged against him — would chill a person of ordinary firmness from continuing to engage in that protected activity.

104. Mr. Rushing's protected activity was the but-for cause and a substantial and motivating factor in Defendants' decision to seize, arrest, jail, and charge him. Absent his Freedom of Information Act request and his refusal to abandon it, Mr. Rushing would not have been arrested.

105. The retaliation in this case was not the isolated act of an officer on the street. It was directed by the City's Mayor — its chief executive officer and final policymaker — and carried out personally by the City's Chief of Police, its final policymaker for law enforcement. The City is therefore liable for the retaliation as its own official act, and the

existence or absence of probable cause does not immunize a municipality from liability for an official municipal policy of retaliation.

106. Based on information and belief, Mayor Noel Foster, after seeing Mr. Rushing in the lobby of the City Hall in White Hall, Mayor Noel Foster unlawfully ordered Police Chief David Parker to arrest Mr. Rushing for attempting to make a lawful verbal Freedom of Information in person concerning the costs of the Skycop Cameras. Then, Police Chief David Parker without inquiry or investigation then unlawfully followed the order of Mayor Noel Foster, a former police officer, to arrest Mr. Rushing.

107. As a direct and proximate result of Defendants' conduct, Mr. Rushing has suffered and continues to suffer physical pain and injury to his wrists and arm; the indignity and humiliation of a public arrest in his own community at the age of seventy-eight; the deprivation of his liberty; the deprivation of his rights under the First and Fourteenth Amendments to the United States Constitution and under the Arkansas Constitution; mental anguish and emotional distress; damage to his reputation, including a publicly available booking photograph and arrest record; the loss of value of the cash bond posted for his release; the cost of defending a criminal prosecution; the denial of access to public records to which he is entitled by law; and the chilling of his willingness and the willingness of other White Hall citizens to seek public records and to speak critically of City officials.

108. To this day, the City of White Hall has not produced to Mr. Rushing the records he requested on June 22, 2026.

## COUNT I
## 42 U.S.C. § 1983 — First Amendment Retaliation and Unlawful Seizure
## (All Defendants)

109. Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

110. At all relevant times, Defendants acted under color of the statutes, ordinances, regulations, customs, and usages of the State of Arkansas and the City of White Hall.

111. Mr. Rushing engaged in activity protected by the First Amendment to the United States Constitution, made applicable to the States and their political subdivisions through the Fourteenth Amendment, when he requested public records from the City of White Hall, when he asserted his statutory right to make that request orally, and when he questioned and criticized the conduct of the Mayor and the Chief of Police.

112. Defendants took adverse action against Mr. Rushing because of that protected activity, including by seizing his person, arresting him without probable cause, handcuffing him, transporting him to a jail in another county, causing him to be booked and jailed, and causing a criminal charge to be initiated and maintained against him.

113. Those adverse actions would chill a person of ordinary firmness from continuing to engage in the protected activity.

114. Mr. Rushing's protected activity was a substantial and motivating factor in, and the but-for cause of, the adverse actions taken against him.

115. Defendants lacked probable cause, arguable probable cause, or any other lawful justification for the seizure and arrest of Mr. Rushing. The seizure of his person was therefore also unreasonable under the Fourth Amendment, made applicable to the States through the Fourteenth Amendment.

116. To the extent any Defendant contends that probable cause existed, Plaintiff pleads that objective evidence will show that otherwise similarly situated individuals who did not engage in the same protected speech were not arrested, and further pleads that the

retaliation here was carried out pursuant to an official municipal policy and by the City's final policymakers, so that no probable-cause bar applies.

117. The City of White Hall is liable under 42 U.S.C. § 1983 because the deprivation of Mr. Rushing's rights was caused by (a) an official policy, practice, or custom of the City requiring that Freedom of Information Act requests be submitted in writing and refusing to honor oral requests; (b) an official policy, practice, or custom of the City permitting citizens to be barred from City Hall without notice, hearing, or review; (c) the decisions and directives of Defendant Foster, the City's chief executive officer and final policymaker; (d) the decisions and directives of Defendant Parker, the City's final policymaker for law enforcement, who personally effected the arrest; and (e) the City's deliberate indifference in failing to train and supervise its officials and officers regarding the requirements of the Arkansas Freedom of Information Act and the First Amendment rights of citizens who invoke it.

118. The official-capacity claims against Defendants Foster and Parker are claims against the City of White Hall and are pleaded to ensure complete relief, including prospective injunctive and declaratory relief against the offices responsible for the policies at issue.

119. Defendant Parker and Defendant Foster are additionally sued under this Count in their individual capacity. At the time of Mr. Rushing's arrest it was clearly established that a citizen may not be seized or arrested in retaliation for protected speech or for petitioning his government, and that no officer may seize a person without probable cause. No reasonable officer in Defendant Parker's position could have believed that a seventy-eight-year-old citizen seated quietly in the lobby of a public building during business hours, present for the purpose of making a statutory request for public records, was

committing a criminal offense. Defendant Parker is therefore not entitled to qualified immunity.

120. No reasonable Mayor of a City, a former police officer, in a Mayor's position could have believed that a seventy-eight-year-old citizen seated quietly in the lobby of a public building during business hours, present for the purpose of making a statutory request for public records, was committing a criminal offense. Defendant Foster is therefore not entitled to qualified immunity.

121. The Eighth Circuit has recently confirmed, in a case arising from this State, that a municipal official's unsupported assertion that protected activity caused disruption is entitled to no judicial deference and does not remove a First Amendment retaliation claim from the jury. *Melton v. City of Forrest City*, 147 F.4th 896, 903 (8th Cir. 2025). Defendants' characterization of Mr. Rushing's presence in a chair as a "disturbance," and Defendant Parker's reliance on an unwritten and unattributed report that Mr. Rushing had previously been "told" not to return, are precisely the kind of bald assertions that cannot support judgment as a matter of law. Moreover, no government official can ban a citizen from a public office in the future without adequate notice and hearing (due process).

122. Defendant Parker's conduct was willful, malicious, and undertaken with reckless and callous indifference to Mr. Rushing's clearly established federal rights, entitling Mr. Rushing to an award of punitive damages against Defendant Parker in his individual capacity under 42 U.S.C. § 1983.

123. Defendant Foster's conduct was willful, malicious, and undertaken with reckless and callous indifference to Mr. Rushing's clearly established federal rights, entitling Mr.

Rushing to an award of punitive damages against Defendant Foster in his individual capacity under 42 U.S.C. § 1983.

124. As a direct and proximate result of Defendants' violations of 42 U.S.C. § 1983, Mr. Rushing has suffered the injuries and damages described above, for which he is entitled to compensatory damages, nominal damages, declaratory and injunctive relief, and an award of reasonable attorney's fees, expert fees, and costs under 42 U.S.C. § 1988.

## COUNT II
**Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-123-105**
**First Amendment and Article 2 Retaliation**
**(All Defendants)**

125. Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

126. Article 2, § 4 of the Arkansas Constitution guarantees to the people the right to assemble together to consult for the common good, to make known their opinions to their representatives, and to apply to those invested with the powers of government for redress of grievances by address or remonstrance.

127. Article 2, § 6 of the Arkansas Constitution guarantees that the liberty of the press shall forever remain inviolate and that the free communication of thoughts and opinions is one of the invaluable rights of man, and that every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of such right.

128. Article 2, § 15 of the Arkansas Constitution guarantees the right of the people to be secure in their persons against unreasonable searches and seizures.

129. Mr. Rushing's request for public records, his assertion of his statutory right to make that request orally, and his criticism of City officials were exercises of rights secured to him by Article 2, §§ 4 and 6 of the Arkansas Constitution.

130. Defendants, under color of the statutes, ordinances, regulations, customs, and usages of the State of Arkansas and of the City of White Hall, subjected Mr. Rushing and caused Mr. Rushing to be subjected to the deprivation of those rights, and to the deprivation of his right under Article 2, § 15 to be free from unreasonable seizure, by arresting him without probable cause in retaliation for the exercise of those rights.

131. Defendants are therefore liable to Mr. Rushing under Ark. Code Ann. § 16-123-105(a). In construing that section, this Court may look for guidance to state and federal decisions interpreting the Civil Rights Act of 1871, 42 U.S.C. § 1983. Ark. Code Ann. § 16-123-105(c).

132. Defendant Parker is sued under this Count in his individual capacity as well as in his official capacity. Ark. Code Ann. § 21-9-301 does not immunize intentional conduct, does not bar claims for declaratory or injunctive relief, and does not apply to the extent the City is covered by liability insurance or an equivalent program of coverage.

133. Defendant Foster is sued under this Count in his individual capacity as well as in his official capacity. Ark. Code Ann. § 21-9-301 does not immunize intentional conduct, does not bar claims for declaratory or injunctive relief, and does not apply to the extent the City is covered by liability insurance or an equivalent program of coverage from Arkansas Municipal League's Cash/Slush Fund/Tax payor Funds used to pay settlements.

134. As a direct and proximate result of Defendants' violations of the Arkansas Civil Rights Act, Mr. Rushing has suffered the injuries and damages described above, for which he is entitled to compensatory damages, declaratory and injunctive relief, and an award of costs and reasonable attorney's fees as provided by the Arkansas Civil Rights Act.

## <u>COUNT III</u>
## Violation of the Arkansas Freedom of Information Act and Denial of Rights

**Ark. Code Ann. §§ 25-19-101 et seq., 25-19-105, and 25-19-107**
**(All Defendants)**

135. Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

136. Mr. Rushing is a citizen of the State of Arkansas entitled to inspect and copy the public records of the City of White Hall under Ark. Code Ann. § 25-19-105(a)(1)(A).

137. The City of White Hall is a public body, and Defendants Foster and Parker are custodians of the City's public records, within the meaning of the Arkansas Freedom of Information Act.

138. On June 22, 2026, Mr. Rushing made a valid request under the Arkansas Freedom of Information Act, in person, during regular business hours, at the office of the custodian, for records reflecting the per-unit cost, installation cost, and monthly cost to the City of the City's street cameras.

139. The requested records are public records within the meaning of Ark. Code Ann. § 25-19-103, and no exemption applies to them.

140. Defendants denied Mr. Rushing the rights granted to him by the Arkansas Freedom of Information Act by (a) refusing to accept and act upon an oral, in-person request as required by Ark. Code Ann. § 25-19-105(a)(2)(B); (b) imposing a written-submission and online-submission requirement that the General Assembly did not enact and did not authorize; (c) failing to produce the requested records or to state any lawful basis for withholding them; and (d) causing Mr. Rushing to be arrested and jailed for the act of making the verbal in-person request.

141. Defendants' conduct constitutes a denial of rights granted by the Arkansas Freedom of Information Act within the meaning of Ark. Code Ann. § 25-19-107(a), entitling Mr.

Rushing to appeal that denial to this Court, to an immediate hearing, and to an order directing compliance.

142. The City's written-request policy, practice, or custom operates as a continuing denial of the rights of Mr. Rushing and of every other citizen of Arkansas who seeks records from the City of White Hall, and will continue to operate as such absent an order of this Court.

143. Mr. Rushing is entitled to an order of this Court directing Defendants to produce the requested records, to an order enjoining the enforcement of the City's unlawful written-request policy, practice, or custom, and to an award of costs and reasonable attorney's fees under Ark. Code Ann. § 25-19-107(d).

144. Defendants did not act in good faith upon the advice of counsel, upon a statute, upon an ordinance, upon a court order, or upon an opinion of the Attorney General, and no such authority could have authorized what Defendants did. No lawyer, no statute, no ordinance, no court, and no Attorney General has ever told a municipality that it may arrest a citizen for making a Freedom of Information Act request out loud.

## COUNT IV
**Declaratory Judgment**
**Ark. Code Ann. § 16-111-101 et seq.**
**(All Defendants)**

145. Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

146. An actual, justiciable, and continuing controversy exists between Mr. Rushing and Defendants concerning the construction and validity of the City of White Hall's policies, practices, and customs governing requests for public records, and concerning the rights, status, and legal relations of the parties under the Arkansas Freedom of Information Act, the Arkansas Constitution, and the United States Constitution.

147. The controversy is real and substantial, is ripe, and admits of specific relief through a decree of a conclusive character. Mr. Rushing intends to continue to seek public records from the City of White Hall, including the records he requested on June 22, 2026, and reasonably fears that he will again be barred, arrested, or charged for doing so.

148. Under Ark. Code Ann. §§ 16-111-102 and 16-111-104, this Court has the power to declare rights, status, and other legal relations, and any person whose rights, status, or other legal relations are affected by a statute or municipal ordinance may have determined any question of construction or validity arising thereunder and obtain a declaration of rights thereunder.

149. Plaintiff is entitled to a judgment declaring that:

(a) The Arkansas Freedom of Information Act permits a citizen of the State of Arkansas to make a request for public records orally and in person, and does not require that a request be reduced to writing or submitted through any particular channel;

(b) Any policy, practice, or custom of the City of White Hall requiring that a Freedom of Information Act request be submitted in writing or online as a condition of the City's obligation to respond is contrary to Ark. Code Ann. § 25-19-105(a)(2)(B) and is void and unenforceable;

(c) White Hall City Hall, during regular business hours, is open to the public, and a citizen present there to make a request under the Arkansas Freedom of Information Act is present with license and privilege and is authorized by law to be upon the premises within the meaning of Ark. Code Ann. §§ 5-39-101 and 5-39-203(c);

(d) An order directing a citizen to leave a public building for the purpose of preventing that citizen from exercising rights conferred by the Arkansas Freedom of Information Act is not a lawful order, and disregard of such an order cannot supply the elements of criminal trespass;

(e) Any policy, practice, or custom of the City of White Hall under which a citizen may be barred from entering White Hall City Hall without written notice, without a hearing, and without any avenue of review violates the First and Fourteenth Amendments to the United States Constitution and Article 2 of the Arkansas Constitution;

(f) White Hall City Hall is not "critical infrastructure" within the meaning of Ark. Code Ann. § 5-39-203(b)(1)(B); and

(g) The arrest, detention, and prosecution of Larry G. Rushing on June 22, 2026, violated his rights under the First and Fourth Amendments to the United States Constitution and under Article 2, §§ 4, 6, and 15 of the Arkansas Constitution.

150. Under Ark. Code Ann. § 16-111-110, Plaintiff is further entitled to such further relief as may be necessary or proper based upon the declaration sought, including injunctive relief and an award of costs.

## COUNT V
**Assault and Battery**
**(Defendant David Parker, Individually)**

151. Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

152. This Count is asserted against Defendant David Parker in his individual capacity.

153. On June 22, 2026, Mr. Rushing, then seventy-eight years of age, was seated in a chair in the lobby of White Hall City Hall. He was unarmed. He had made no threat. He had touched no one. He had committed no criminal offense.

154. Defendant Parker approached Mr. Rushing yelling at him, and disabling Mr. Rushing's hearing aids and, by his own written admission, reached out and took hold of Mr. Rushing's left arm under his shoulder snatching him up from a seated position, turned him around an applied a wrist-lock. Mr. Rushing immediately said, "Do not touch me." Defendant Parker did not release him. Instead, and again by his own written admission, Defendant Parker pulled Mr. Rushing up and out of the chair by that arm.

155. Defendant Parker acted intentionally. He intended to make physical contact with the person of Mr. Rushing, and he intended the contact he made.

156. Defendant Parker's conduct by yelling and snatching Mr. Rushing from a seated position placed Mr. Rushing in reasonable apprehension of immediate harmful and offensive physical contact and constituted an assault under the law of Arkansas.

157. Defendant Parker's conduct constituted harmful and offensive physical contact with the person of Mr. Rushing, to which Mr. Rushing did not consent and to which he expressly and contemporaneously objected, and constituted a battery under the law of Arkansas.

158. Defendant Parker's contact with Mr. Rushing was not privileged. A law enforcement officer is privileged to use only that degree of physical force reasonably necessary to effect a lawful arrest. See Ark. Code Ann. § 5-2-610. Because there was no probable cause to believe that Mr. Rushing had committed any offense, the arrest was unlawful and no degree of force was privileged.

159. In the alternative, and even if any privilege had attached, the force employed was objectively unreasonable and excessive under the circumstances, which involved a seated, unarmed, non-threatening, and non-fleeing seventy-eight-year-old man from a seated position in a municipal lobby.

160. The handcuffing of Mr. Rushing behind his back with sufficient tightness to cut into the wrists of a seventy-eight-year-old man, and the continuation of that restraint during transport out of Jefferson County notwithstanding his repeated complaints of pain, was a continuing harmful and offensive contact for which Defendant Parker, who ordered the transport, is responsible.

161. Officer Cody Jackson decided to remove the handcuffs from behind Mr. Rushing and re-cuff Mr. Rushing in the front. See the indentations in his left and right wrist below:




See Screenshot snipped from Officer Cody Jackson Bodycam at minute 8:10 depicting Mr. Rushing left wrist.




See Screenshot snipped from Officer Cody Jackson Bodycam at minute 8:32 depicting Mr. Rushing right wrist.

162. Ark. Code Ann. § 21-9-301 confers immunity upon municipal employees only as to claims arising from negligent acts. It does not immunize the intentional torts of assault and battery, and it affords Defendant Parker no protection from this Count.

163. As a direct and proximate result of Defendant Parker's assault and battery, Mr. Rushing suffered physical pain and injury to his left arm and to both wrists, the indignity of being seized and dragged from a chair in public view in his own community, humiliation, embarrassment, mental anguish, and emotional distress, and incurred expenses, all to his damage.

164. Defendant Parker acted with malice, or in the alternative with a conscious and reckless disregard of the likelihood that his conduct would cause harm to Mr. Rushing, entitling Mr. Rushing to an award of punitive damages against Defendant Parker in his individual capacity under Ark. Code Ann. §§ 16-55-206 and 16-55-207.

**COUNT VI**
**False Arrest and False Imprisonment**
**(All Defendants)**

165. Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

166. This Count is asserted against all Defendants, Defendant David Parker in his individual capacity Defendant Joel Foster in his individual capacity and against the City of White Hall as their employer.

167. Under the law of Arkansas, false imprisonment is the unlawful violation of the personal liberty of another, consisting of detention without sufficient legal authority. False arrest is false imprisonment accomplished under an assertion of legal authority to arrest.

168. On June 22, 2026, Defendant Foster said "call the police" and Defendant Parker intentionally seized Mr. Rushing by the arm, announced that he was under arrest, caused him to be handcuffed with his hands behind his back, and personally directed that he be transported in custody approximately forty miles to the Sheridan Detention Center in Grant County, where he was booked, photographed, and confined until a cash bond was posted for his release.

169. From the moment Defendant Parker took hold of his arm until his release from the Sheridan Detention Center, Mr. Rushing was not free to leave. He was conscious of his confinement. He did not consent to it. He objected to it at the outset, when he told Defendant Parker not to touch him, and he protested it throughout the transport.

170. Defendant Parker held no warrant for Mr. Rushing's arrest. A warrantless arrest is supported by legal authority only where the officer has probable cause to believe that the person arrested has committed an offense. For the reasons set out in Part IV.F of this Complaint, there was no probable cause to believe that Mr. Rushing had committed

criminal trespass or any other offense. White Hall City Hall was open to the public; Mr. Rushing was present with license and privilege under Ark. Code Ann. § 5-39-101; he was authorized by law to be present under Ark. Code Ann. § 25-19-105(a); and no lawful order to leave had been communicated to him.

171. Defendant Parker and Defendant Foster knew the facts that defeated probable cause. He knew that City Hall was open to the public and that it was the middle of a business day. They knew that Mr. Rushing was seated in a chair in the public lobby. They knew, because Mr. Rushing told him before the arrest was announced, that Mr. Rushing was there to make a Freedom of Information Act request. Defendant Foster and Defendant Parker nevertheless proceeded directly from a conversation with City officials behind the glass partition to laying hands upon Mr. Rushing.

172. Rule 5.2 of the Arkansas Rules of Criminal Procedure authorizes a law enforcement officer who believes a misdemeanor has been committed to issue a citation in lieu of arrest or continued custody, and Mr. Rushing was in fact charged by citation. A citation was all that was ever required to bring Mr. Rushing before a court. The handcuffs, the forty-mile transport to a jail in another county, the booking, the photograph, and the cash bond served no legitimate law enforcement purpose, and they are evidence that the object of the detention was punishment and not law enforcement. None of the officers present questioned or offered to simply issue a citation.

173. The detention of Mr. Rushing was therefore without sufficient legal authority and constituted false arrest and false imprisonment under the law of Arkansas.

174. Defendant Parker and Defendant Foster committed the acts described in this Count while on duty and in the course and scope of their employment as Chief of Police of the City of

White Hall, and the City is liable for those acts under the doctrine of respondeat superior. Ark. Code Ann. § 21-9-301 does not bar this Count, because the Count arises from intentional and not negligent conduct; in the alternative, any immunity is waived to the extent of the coverage described above.

175. As a direct and proximate result of the false arrest and false imprisonment, Mr. Rushing suffered the loss of his liberty, physical pain and injury, the indignity and humiliation of a public arrest and jailing, damage to his reputation, mental anguish and emotional distress, the loss of the cash bond posted for his release, and the expense of defending the resulting criminal charge, all to his damage.

176. Defendant Parker and Defendant Foster acted with malice, or in the alternative with a conscious and reckless disregard of the likelihood that his conduct would cause harm to Mr. Rushing, entitling Mr. Rushing to an award of punitive damages against Defendant Parker and Foster in their individual capacity under Ark. Code Ann. §§ 16-55-206 and 16-55-207.

**COUNT VII**
**Abuse of Process**
**(All Defendants)**

177. Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

178. This Count is asserted against Defendant David Parker Defendant Noe Foster in their individual capacity and against the City of White Hall as their employer. It is pleaded in addition to, and in the alternative to, Counts I, II, and VI.

179. This Count does not depend upon the absence of probable cause. Under the law of Arkansas, abuse of process lies where (a) a legal procedure is set in motion in proper form, even with probable cause and even with ultimate success; (b) the procedure is

perverted to accomplish an ulterior purpose for which it was not designed; and (c) a willful act is perpetrated in the use of the process that is not proper in the regular conduct of the proceeding. The test is whether a judicial process is used to extort or to coerce. *Routh Wrecker Serv., Inc. v. Washington*, 335 Ark. 232, 980 S.W.2d 240 (1998).

180. Defendant Parker and Foster set a legal procedure in motion against Mr. Rushing. They had him arrested, caused him to be booked and held on a cash bond, and caused a citation to issue charging him with criminal trespass under Ark. Code Ann. § 5-39-203, returnable to the White Hall Department of the Jefferson County District Court.

181. The criminal process exists to bring a person accused of an offense before a court for adjudication. Upon information and belief, Defendants used it for something else: to coerce Mr. Rushing into abandoning his oral request for the street-camera records and submitting to the City's unlawful written-request policy; to punish him for standing on the statute and for challenging the Mayor; to remove him from City Hall and deter him from returning; and to deter other citizens of White Hall from doing what he had done.

182. After the process issued, Defendant Parker committed willful acts in the use of that process that were not proper in the regular conduct of a misdemeanor trespass proceeding. Although a citation would have sufficed under Ark. R. Crim. P. 5.2, Defendant Parker personally directed that Mr. Rushing be transported out of Jefferson County to a jail approximately forty miles away and held there on a cash bond.

183. That same evening, with the charge pending, Defendant Parker told Mr. Rushing that because a full cash bond had been posted he did not have to appear in court at all. That was an invitation to forfeit the bond and allow the charge to be disposed of without any court ever examining the arrest. In the same conversation Defendant Parker asked Mr.

Rushing what he had needed from City Hall, and when Mr. Rushing restated his request for the camera records, Defendant Parker refused to discuss what the Mayor had told him and ordered him out of the police station. The Chief of Police thus used a meeting about a pending criminal charge to reinforce the Mayor's refusal of a records request.

184. Defendant Parker further wrote into his official narrative the assertion that White Hall City Hall is "critical infrastructure," an assertion with no function in a misdemeanor trespass report other than to lay the predicate for a felony. Upon information and belief, Defendant Parker did so in order to hold the threat of a felony charge over Mr. Rushing as leverage.

185. As of the filing of this Complaint, the charge remains pending and the records Mr. Rushing requested remain unproduced. The use of a criminal prosecution to coerce a citizen into surrendering a statutory right is a classic example of the tort of abuse of process.

186. Defendant Parker committed the acts described in this Count while on duty and in the course and scope of his employment as Chief of Police of the City of White Hall, and the City is liable for those acts under the doctrine of respondeat superior. Ark. Code Ann. § 21-9-301 does not bar this Count, because the Count arises from intentional and not negligent conduct; in the alternative, any immunity is waived to the extent of the coverage described above.

187. As a direct and proximate result of Defendants' abuse of process, Mr. Rushing has suffered the loss of his liberty, the loss of the cash bond posted for his release, the expense of defending the criminal charge, damage to his reputation, humiliation, mental anguish, and emotional distress, all to his damage.

188. Defendant Parker and Foster acted with malice, or in the alternative with a conscious and reckless disregard of the likelihood that his conduct would cause harm to Mr. Rushing, entitling Mr. Rushing to an award of punitive damages against Defendant Parker in his individual capacity under Ark. Code Ann. §§ 16-55-206 and 16-55-207.

## COUNT VIII
## Outrage (Intentional Infliction of Emotional Distress)
## (All Defendants)

189. Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

190. This Count is asserted against Defendant David Parker and Foster in their individual capacity and against the City of White Hall as their employer.

191. Defendant Parker is the highest-ranking law enforcement officer in the City of White Hall. Defendant Noel Foster is the Mayor of the City of White Hall. On June 22, 2026, Defendant Foster ordered Chief Parker to arrest Mr. Rushing. On June 22, 2026 Parker held and exercised actual authority over the liberty of Mr. Rushing, and he abused it. He approached a seated seventy-eight-year-old man who had committed no crime, screamed at him, laid hands upon him over his express objection, and pulled him out of his chair by the arm. He caused him to be handcuffed behind his back and walked out of City Hall onto a public street, in his own community, in the middle of the afternoon. He ordered him driven forty miles to a jail in another county while the handcuffs cut into his wrists. He caused him to be booked, photographed, and held for cash on a charge for which a citation would have sufficed. He wrote the predicate for a felony into his report. And when Mr. Rushing came to the police station that evening with his wife to ask what he had done wrong, Defendant Parker told him he was done talking and ordered him out.

192. Defendant Foster and Parker did all of this because Mr. Rushing asked what the City's cameras cost.

193. Mr. Rushing's age was obvious to Defendant Parker and, upon information and belief, was known to him. Defendant Parker knew that a man of seventy-eight years is peculiarly susceptible to physical injury and to emotional distress from being manhandled, handcuffed, and jailed, and he proceeded anyway.

194. Defendant Foster and Parker intended to inflict emotional distress upon Mr. Rushing or knew or should have known that emotional distress was the likely result of his conduct.

195. Defendant Foster's and Parker's conduct was extreme and outrageous, was beyond all possible bounds of decency, and is utterly intolerable in a civilized community. The arrest and jailing of an elderly citizen by a chief of police, at the direction of a mayor, for the act of asking to see public invoices is conduct that would lead an average member of the community to exclaim, "Outrageous!"

196. Defendant Foster's Parker's conduct was the cause of Mr. Rushing's distress, and the emotional distress Mr. Rushing sustained was so severe that no reasonable person could be expected to endure it, e.g., sleeplessness, anxiety, fear of returning to City Hall or of encountering White Hall police, physical manifestations, resulting in a visit to the Doctor for numbness and damage to Mr. Rushing's left wrist.

197. This Count is pleaded in addition to, and in the alternative to, every other Count of this Complaint, to the extent that no other Count affords Mr. Rushing complete relief for the emotional injuries inflicted upon him.

198. Defendant Foster Parker committed the acts described in this Count while on duty and in the course and scope of his employment as Chief of Police of the City of White Hall, and

the City is liable for those acts under the doctrine of respondeat superior. Ark. Code Ann. § 21-9-301 does not bar this Count, because the Count arises from intentional and not negligent conduct; in the alternative, any immunity is waived to the extent of the coverage described above.

199. As a direct and proximate result of Defendant Foster's and Parker's outrageous conduct, Mr. Rushing has suffered severe emotional distress, mental anguish, humiliation, and embarrassment, together with physical pain and injury resulting in his damages.

200. Defendant Foster and Parker acted with malice, or in the alternative with a conscious and reckless disregard of the likelihood that his conduct would cause harm to Mr. Rushing, entitling Mr. Rushing to an award of punitive damages against Defendant Parker in his individual capacity under Ark. Code Ann. §§ 16-55-206 and 16-55-207.

**COUNT IX**
**Civil Action for Felony Conduct**
**Ark. Code Ann. § 16-118-107; Ark. Code Ann. § 5-13-202(a)(4)(C)**
**(Defendant David Parker, Individually)**

201. Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

202. Ark. Code Ann. § 16-118-107(a)(1) provides that any person injured or damaged by reason of conduct of another person that would constitute a felony under Arkansas law may file a civil action to recover damages based on the conduct. The burden of proof is a preponderance of the evidence. Ark. Code Ann. § 16-118-107(a)(2). The remedy is in addition to any other remedy in law or equity. Ark. Code Ann. § 16-118-107(c). Neither a criminal charge nor a conviction is a prerequisite to the action.

203. A person commits battery in the second degree, a Class D felony, if he knowingly and without legal justification causes physical injury to a person he knows to be sixty (60)

years of age or older. Ark. Code Ann. § 5-13-202(a)(4)(C), (b). "Physical injury" includes the impairment of physical condition, the infliction of substantial pain, and the infliction of bruising, swelling, or a visible mark associated with physical trauma. Ark. Code Ann. § 5-1-102.

204. Defendant Parker knowingly caused physical injury to Mr. Rushing. He seized Mr. Rushing's left arm near the wrist and pulled him up and out of a chair by that arm, and he caused Mr. Rushing to be handcuffed behind his back and transported in that condition, inflicting substantial pain and injury to Mr. Rushing's left arm and to both wrists.

205. Mr. Rushing was seventy-eight years of age. His age was apparent. Upon information and belief, Defendant Parker knew Mr. Rushing, as his own narrative's reference to what he had been "informed in the past" about Mr. Rushing reflects, and knew him to be well over sixty years of age. Mr. Rushing's date of birth appears in the White Hall Police Department's own records of the arrest.

206. Defendant Parker acted without legal justification. A law enforcement officer is justified in using nondeadly physical force to effect an arrest only where he reasonably believes the force is necessary and does not know the arrest to be unlawful. Ark. Code Ann. § 5-2-610(a). Defendant Parker knew that the arrest of a citizen seated in the public lobby of City Hall during business hours, present to make a Freedom of Information Act request, was unlawful. In the alternative, no officer could reasonably have believed that any force was necessary to take a seated, unarmed, unresisting seventy-eight-year-old man into custody on a misdemeanor.

207. Defendant Parker's conduct would constitute the felony of battery in the second degree under Arkansas law, and Mr. Rushing was injured and damaged by reason of that conduct.

208. Mr. Rushing is entitled to recover his damages from Defendant Parker under Ark. Code Ann. § 16-118-107(a)(1), together with his costs and attorney's fees under Ark. Code Ann. § 16-118-107(a)(3).

209. Defendant Parker acted with malice, or in the alternative with a conscious and reckless disregard of the likelihood that his conduct would cause harm to Mr. Rushing, entitling Mr. Rushing to an award of punitive damages against Defendant Parker in his individual capacity under Ark. Code Ann. §§ 16-55-206 and 16-55-207.

## COUNT X
**42 U.S.C. § 1983 and Ark. Code Ann. § 16-123-105 — Excessive Force**
**Fourth and Fourteenth Amendments; Ark. Const. art. 2, § 15**
**(All Defendants)**

210. Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

211. The Fourth Amendment, made applicable to the States through the Fourteenth Amendment, and Article 2, § 15 of the Arkansas Constitution guarantee the right to be free from the use of objectively unreasonable force in the course of an arrest or other seizure. Whether force is reasonable turns on the totality of the circumstances, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight, together with the relationship between the need for force and the amount of force used, the extent of the injury, and any effort by the officer to temper or limit the force.

212. This Count is pleaded in addition to, and independently of, the unlawful seizure claims in Counts I and II. Even if Defendant Parker had possessed probable cause to arrest, the force used to effect that arrest was objectively unreasonable.

213. The crime at issue was, at most, a nonviolent misdemeanor of the lowest order: sitting in a chair in a public lobby.

214. Mr. Rushing posed no threat to anyone. He was seventy-eight years old, seated, and unarmed. He had threatened no one and touched no one. The City employees with whom he had been dealing were behind a closed glass partition.

215. Mr. Rushing did not resist and did not flee. He was seated when Defendant Parker approached him and he remained seated until Defendant Parker pulled him up. He was never charged with resisting arrest, fleeing, obstruction, or disorderly conduct.

216. Defendant Parker made no effort to temper the force he used. He took hold of Mr. Rushing and pulled him from the chair before announcing that he was under arrest, and therefore before Mr. Rushing had any opportunity to stand and submit to an arrest voluntarily. When Mr. Rushing said, "Do not touch me," Defendant Parker did not release him, step back, or explain; he pulled him up and out of the chair.

217. Mr. Rushing was then handcuffed with his hands behind his back, tightly enough that the handcuffs cut into his wrists. He complained of the pain. He was nevertheless kept in that condition for a transport that Defendant Parker had personally and needlessly lengthened by ordering him taken to a jail in another county, until the transporting officer eventually pulled to the side of the road and moved the handcuffs to the front. No law enforcement need justified handcuffing a compliant seventy-eight-year-old misdemeanor arrestee behind his back for a forty-mile drive.

218. Defendant Parker is liable for the handcuffing and its continuation because he ordered the arrest, delivered Mr. Rushing to the handcuffing officer, directed the out-of-county transport, and, as Chief of Police, was the supervising officer on the scene with the authority and the opportunity to prevent the use of unreasonable force and failed to do so.

219. Mr. Rushing suffered physical pain and injury to his left arm and to both wrists as a result of the force used against him.

220. At the time of these events it was clearly established that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and who pose little or no threat to the security of the officers or the public. *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009). No reasonable officer could have believed that screaming at, seizing, and pulling a seated, unresisting seventy-eight-year-old man from a chair was a lawful means of enforcing a misdemeanor trespass statute. Defendant Parker is not entitled to qualified immunity.

221. The City of White Hall is liable under this Count because the force was used and directed personally by Defendant Foster and carried out by Defendant Parker, the City's final policymaker with respect to law enforcement practices and the use of force, and because, upon information and belief, the City has failed to train and supervise its officers regarding the use of force against elderly, nonviolent, and nonresisting misdemeanor arrestees and regarding the duty to respond to an arrestee's complaint that handcuffs are causing pain, with deliberate indifference to the rights of persons in Mr. Rushing's position.

222. Defendant Parker's conduct was willful, malicious, and undertaken with reckless and callous indifference to Mr. Rushing's clearly established rights, entitling Mr. Rushing to

an award of punitive damages against Defendant Foster and Parker in their individual capacities.

223. As a direct and proximate result of the excessive force used against him, Mr. Rushing has suffered the injuries and damages described above, for which he is entitled to compensatory damages, nominal damages, and an award of reasonable attorney's fees, expert fees, and costs under 42 U.S.C. § 1988 and the Arkansas Civil Rights Act.

## COUNT XI
**42 U.S.C. § 1983 and Ark. Code Ann. § 16-123-105 — Procedural Due Process and First Amendment**
**The Unwritten Ban from City Hall**
**(All Defendants)**

224. Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

225. This Count is pleaded in the alternative. Mr. Rushing denies that he was ever barred from White Hall City Hall. To the extent Defendants contend, as Defendant Parker's narrative asserts, that Mr. Rushing had been "told" at some time in the past that he could not return to City Hall, and to the extent Defendants rely upon that purported ban as authority for his arrest, the ban is itself a violation of his constitutional rights.

226. Mr. Rushing has a liberty interest, protected by the Fourteenth Amendment and by Article 2, §§ 8 and 21 of the Arkansas Constitution, in entering and remaining in public buildings that are open to the public generally. He has a right, protected by the First Amendment and by Article 2, §§ 4 and 6 of the Arkansas Constitution, to petition his municipal government at the seat of that government. And he has a statutory entitlement under Ark. Code Ann. § 25-19-105(a)(1)(A) to inspect and copy public records at the office of the custodian during regular business hours.

227. Any ban upon Mr. Rushing's presence at City Hall deprived him of each of those interests without any process whatsoever. He received no written notice. He received no statement of the conduct said to justify the ban. He received no hearing, before or after the ban was imposed. The ban had no stated duration and no stated scope. It was governed by no ordinance, no written policy, and no standards. No avenue of appeal or review was provided.

228. A regime under which a municipal official may, on his own say-so and without standards, permanently exclude a citizen from the seat of municipal government vests unbridled discretion in that official to silence critics, and it independently violates the First Amendment.

229. The purported ban was enforced against Mr. Rushing by arrest. Defendant Parker's own narrative invokes what he had been "informed in the past" as justification for treating Mr. Rushing's presence in a public lobby as a crime.

230. The deprivation was caused by the official policy, practice, or custom of the City of White Hall, and by the decisions of Defendants Foster and Parker as the City's final policymakers, as set forth above.

231. The deprivation is continuing. Mr. Rushing is a resident and taxpayer of White Hall who intends to return to City Hall to seek public records, and he cannot do so without risking a second arrest under a ban whose existence, terms, and duration he has never been told.

232. At the time of these events it was clearly established that the government may not deprive a person of a protected liberty interest without notice and an opportunity to be heard. Defendant and Foster are not entitled to qualified immunity under this Count.

233. As a direct and proximate result of Defendants' conduct, Mr. Rushing has suffered the injuries and damages described above, for which he is entitled to compensatory damages, nominal damages, declaratory and injunctive relief as set forth in Count IV and in the Prayer for Relief, and an award of reasonable attorney's fees and costs under 42 U.S.C. § 1988 and the Arkansas Civil Rights Act.

## VI. RESERVATION OF RIGHTS

234. Plaintiff expressly reserves the right to amend this Complaint to add claims and parties, including an individual-capacity claim against Defendant Foster and claims against any other officer or official whose personal involvement in the events of June 22, 2026, is revealed in discovery, and to add claims for malicious prosecution and related relief upon the resolution of the pending criminal charge.

## VII. JURY DEMAND

235. Plaintiff demands a trial by jury on all issues so triable, pursuant to Article 2, § 7 of the Arkansas Constitution and Rule 38 of the Arkansas Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Larry G. Rushing respectfully prays that this Court:

A. Enter judgment in his favor and against Defendants on each Count of this Complaint;

B. Award compensatory damages in an amount to be determined by the jury, in excess of the amount required for federal court jurisdiction in diversity of citizenship cases;

C. Award nominal damages for the deprivation of his constitutional rights;

D. Award punitive damages against Defendant Foster and Parker in his individual capacity under 42 U.S.C. § 1983 and Ark. Code Ann. §§ 16-55-206 and 16-55-207;

E. Enter a declaratory judgment as set forth in Count IV of this Complaint;

F. Enter a mandatory injunction directing Defendants to produce forthwith all records responsive to Plaintiffs June 22, 2026 request concerning the cost, installation cost, and monthly cost of the City's street cameras;

G. Enter a permanent injunction prohibiting Defendants from requiring that a request under the Arkansas Freedom of Information Act be submitted in writing or online as a condition of the City's response, and from arresting, citing, charging, barring, or otherwise retaliating against any citizen for making an oral request for public records;

H. Enter a permanent injunction prohibiting Defendants from barring Plaintiff or any other citizen from White Hall City Hall without written notice, a hearing, and a meaningful avenue of review;

I. Set an immediate hearing on Plaintiffs claim under the Arkansas Freedom of Information Act as required by Ark. Code Ann. § 25-19-107(b);

J. Award reasonable attorney's fees, expert fees, litigation expenses, and costs under 42 U.S.C. § 1988, Ark. Code Ann. § 25-19-107(d), Ark. Code Ann. § 16-118-107(a)(3), and the Arkansas Civil Rights Act;

K. Award pre-judgment and post-judgment interest at the maximum lawful rate; and

L. Grant Plaintiff all other and further relief, both general and special, at law and in equity, to which he may be entitled.

Date: September 18, 2026

Respectfully submitted,

LARRY G. RUSHING, PLAINTIFF

By: ***/s/ Chris P. Corbitt***
Chris P. Corbitt, P.E., Esq.
Arkansas Bar No. 2004089
CORBITT LAW FIRM, PLLC
PO Box 11200
Conway, Arkansas 72034
Telephone: (501) 255-0112
Email: chris@corbittlawfirm.com

*Attorney for Plaintiff Larry G. Rushing*